Good morning. May it please the Court, my name is Rebecca McCarthy and I'm appearing this morning on behalf of Petitioner Thien Ton. I would like to reserve two minutes for rebuttal. Mr. Ton is currently detained in Florence, Arizona. We submit that the crux of the matter before... Do you want to pull that microphone just a little closer because it kind of reverberates in here. Thank you. It's not quite hearing you. Okay. We would submit that the crux of the matter before your honors today is whether past persecution of Mr. Ton has been established, creating a rebuttable presumption of a well-founded fear. And additionally, it should be considered whether the record requires further development. Mr. Ton entered the United States as a refugee from Vietnam when he was 14 years of age. The determination that the family suffered past persecution was made as a result of Mr. Ton's grandfather. As a result of Mr. Ton's grandfather, the record establishes that he assisted the Americans as a lieutenant member of the police prior to the fall of Saigon. The allegiance to the U.S. government as a lieutenant member of the police led to his being forced into a re-education camp. And he was in the re-education camp for a period of four years. These facts remain uncontested. Mr. Ton represented himself before the immigration judge and at the Board of Immigration Appeals. I would submit that as a pro se litigant, the immigration judge has a duty to develop the record. And moreover, the Department of Homeland Security has a duty to produce documents relative to Respondent's claim, as this Court held in the case Dent v. Holder. May I just ask one clarification? That has to do with his refugee status. Right. I couldn't quite figure that out from the record. It's in the briefs that he was a refugee, and either his father and or his grandfather were deemed refugees. Does he have some kind of derivative status, and what do we look to to confirm that? And then secondly, will that give him any other rights, independently having refugee status from Vietnam? I would argue that, well, first of all, the record establishes that he entered as a refugee and the family entered as a refugee. It is not clear whether he was a primary applicant or he was a derivative, which is why I would submit to the Court that if clarification is needed, it may be that he was a primary applicant. As at the time of the immigration proceedings, the trial attorney would have had access to the refugee application. It would have been in his A file. Would it matter whether he's a derivative or a primary applicant in terms of his status? I would say that it would not. It would not matter, but the benefit of having the refugee application submitted to the record would be that we would be able to determine exactly why the family entered as refugees. Because if an individual enters as a refugee, they enter pursuant to INA 207, and under that statute, the government has to establish that either the family suffered past persecution or had a well-founded fear of future persecution. So I would submit that if it was – if the refugee application showed specifically that they entered with a past – that it had been established that there was a past persecution, then the burden would have shifted during proceedings to the government to establish that he no longer had a well-founded fear to return. Kagan. Another question I had is if we had to credit the BIA's finding on past persecution because we're not compelled to find otherwise, did he waive the future persecution argument because I didn't see that he argued it to the BIA, what is the procedural status of that? He was – he was pro se at the BIA level. I thought that he had – he had made, although brief, an argument as to a well-founded fear of future persecution. I can cite to it. And it – I apologize, I can't quite see it. Let me just suggest this. Either you can find it while we hear from the government, or if you find it later, the clerk has a little piece of paper and you can note the location in the record and then we don't have to take your time now. And a copy of that will be provided to the government as well. Thank you, Your Honor. And you, just because the counselor or my colleague has taken two questions that I had here to ask you, the last of which, I can – I can assume, can I not, that the Catt claim is waived? You can assume that the Catt claim is waived. He had – I mean, nothing is said about the Catt claim, so it seems to be waived. Nothing – nothing has been argued as to the Catt claim, so I would concede that. So – and as I understand it, he had an adjusted status as an LPR in 2005? Correct, Your Honor. So whatever status he had prior to that, as of 2005, he had an LPR and then it was retroactively applied back to 2002? Correct, Your Honor. So at this point, we're really with – we're really got a case where we have an LPR status and a crime. That's what we're really looking at, right? You are correct that he is – he is an LPR and he did commit a crime, which is why he was in proceedings. Right. The basis of his adjustment of status was the fact that he entered as a refugee. He was only able to adjust because after – because he entered as a refugee and after one year became eligible to become a permanent resident. But then if we went back, as you say, to figure out the rationale for the refugee status, that wouldn't change the crime issue, correct? But it would change, in your view, evidence as to the presumption? Yes, Your Honor. It would create evidence as to the presumption. And I believe that it would establish that the burden should have shifted. He was convicted of drug-related – he was convicted of drug-related crimes, which would not make him ineligible for asylum. And as I understand it as well, there was no credibility determination? That is incorrect. He was found to be credible by both the immigration judge and the Board of Immigration Appeals. The crimes he was convicted of were not drug-trafficking offenses, correct? No, Your Honor. They were possessions, simple possession. Correct, Your Honor. They were only possession. Did you want to save your remaining time? I would, Your Honor. Thank you. Good morning. My name is Nancy Friedman on behalf of the Attorney General. Does the Court have any questions before I begin? Well, we'll have the refugee question. Okay. The same question I posed to counsel. Okay. I agree with Petitioner's counsel that the record wasn't 100 percent clear as far as documentation on the basis of their refugee status when the family entered. There is a document from a refugee group that says the entire family, mom, dad, and the two children entered as refugees. There's no more specific information, but I just wanted to refer to the testimony of the Petitioner's dad at the hearing, which does say that they entered as refugees related to his father's claim. So what's the effect of that? The effect of that would be Petitioner and his family, parents, were derivatives. Okay. As such, they would not be entitled to any presumption of past persecution, as the Petitioner was suggesting. In a situation like this where you have an LPR who has some convictions, when he's charged as removable, his status is then revoked, and it's then up to that individual to establish a claim of past persecution, just like any other asylum applicant would do. I tried to find some authority or clarification from this court to help you out in clarifying that. Believe it or not, I'm not sure if it comes up that often as far as that specific question. Are there any internal department regulations or bulletins or notices on this? Well, the best I can do is refer you to the part of the asylum statute regarding derivative beneficiaries. I was looking at a case actually from the Second Circuit, which did address this exact kind of a situation. It's not a published case, but I'm going to give you the Westlaw site anyway in case it will be helpful. It's 2009 Westlaw 1941547 from 2009. Sorry, could you do that again? Sure. 2009 Westlaw 1941547, and it's called Nguyen v. Holder, N-G-U-Y-E-N. It was also an applicant from Vietnam who claimed that the board denied him asylum because he was admitted as a refugee and was therefore entitled to the presumption of a well-founded fear, as the petitioner here is suggesting. And the court there held that his derivative status did not create that implicit finding that he suffered past persecution and cited 8 U.S.C. 1157C2. That's the general section on derivative beneficiaries. But do we know that Mr. Tan was admitted as a derivative? Well, there's no evidence in the record that he had filed his own asylum claim, nor did his father, the petitioner's father. The testimony at the hearing was both by the petitioner and by his father that they came in related to the grandfather's status. The grandfather had preceded them here. And you wouldn't need to file an asylum application if you came in as a derivative refugee, correct? Correct. You just came in because you helped our country during the war. I mean, there's a variety of reasons that the individuals came in from Vietnam as refugees. That's my understanding, correct, Your Honor, although that doesn't appear in the record. And I just want to point out, although it may not be obvious from the government's brief, that this is a case where the government recognizes that a family here has suffered and human beings are involved, and it's a sympathetic case and a difficult case, and I acknowledge that. But it seems unfortunate here that because of the convictions and so forth and the claim presented that the petitioner does not have a basis for asylum here. You have the authority, though, and the – not you personally, but the Attorney General and Department of Homeland Security in a case where somebody comes in as a refugee as a result of the Vietnam War, and as Judge Benitez points out, it's not a drug trafficking crime but a simple possession. Either under the current regulations or the guidelines that are being revised or just your general authority, do you have the authority to waive that? Well, let me follow up by asking if you're referring to the exercise of prosecutorial discretion here, Your Honor. Well, of course, the Attorney General had that always, the exercise of prosecutorial discretion. It's just that more recently there have been some family guidelines, and I recognize those are cases where there's no convictions. Correct, Your Honor. So my question is, are there any exceptions to those guidelines, but do you not have the general authority apart from the more recent specific guidelines? My office in the Department of Justice, no, we don't. Of course, the petitioner, through his counsel and his family, are absolutely free to go to ICE and request the exercise of discretion, which ICE can exercise in a variety of ways, you know, from deferral of removal to, you know, other means. In my opinion, it probably won't result in the exercise of discretion based on the multiple convictions here, but, you know, I'm not the decider, of course. I understand that. And they can absolutely do that at any point. Let me move to the BIA decision. It seems to me that the petitioner asserts that he fears returning to Vietnam because the government will persecute him based on his anti-communist political opinion. Now, I'm not suggesting that he gets even any presumption from past persecution, but nonetheless, we have to talk about whether he can fear persecution in the future. So when he asserts that he fears returning to Vietnam because the government will persecute him based on his anti-communist political opinion or based on his anti-communist activities, where does the BIA address that? It seems to me the BIA focuses on economic persecution. We're not talking about persecution based on anti-communist political opinion, and therefore shouldn't the BIA have a chance to think about that once? Well, I think the BIA will. What part of his or that opinion do you say addresses his specific concerns regarding fear of persecution? Well, let's – Because we're not talking about economic here. Okay. You're talking about his political opinion? Yes, we are. Okay. That's his big argument. It doesn't seem to me they ever address that problem. I think they do in a less than direct way. Well, I guess I'm trying to find it. I've got their opinion here. I read it pretty thoroughly. I even tried to outline where I could come up with it. What's your best clause? I'm looking at the last paragraph of the board decision, which says – The last one? Yes, Your Honor. On page 2? Page 3 of the record. It's the second page of the board decision. Right, right, right. It says, inasmuch as the respondent has not met his burden of showing past persecution or a well-founded fear on account of a protected ground. So that's covering any of the protected grounds and any of the issues. But normally we would say, yeah, tell us what you mean. I mean, you know, there's like these five protected grounds. It doesn't give us any illumination under our case law. When we have to remand to say what's the basis, what ground, and also give us some illumination on that? Because they don't adopt just I.J.'s report on this. I think that's telling in that they agreed with the I.J., but they didn't adopt his record at all. They didn't specifically adopt it. But I think their opinion is – Just by saying one comment like that? Do you think that agrees with our precedent? Yes, because they say in a couple of places that he didn't show any harm rising to the level of persecution. But that's not what we're talking about. We're talking about now future persecution, and we're talking about both subjective and objectively reasonable, and they're not really talking about what he really has for subjective fear. Well, the board is addressing his discussion that he will be put in jail and will suffer and so forth. And so, you know, that is addressing his well-founded fear on all the grounds. Okay. So in conclusion, I would summarize by saying the record in this case does not compel a different result than that of the board. Thank you very much, Your Honor. Thank you. Thank you, Your Honors. In response to the question regarding the derivative application and whether the effect of that, this circuit had recently released, as you well know, Mendoza-Pablo, which discussed persecution of family that can be attributed to the child. So I would like to note that that should be taken into consideration, that the family's persecution should be attributed to Mr. Tan. And additionally, in regards to his fear of future persecution based on his anti-communist beliefs, the immigration judge found that he did have a subjective fear of he did have a subjective well-founded fear, but found that he did not have an objective fear. And I would submit that that's an incorrect analysis, that Mr. Tan did not have an objective fear. Would we need to send it back, though, because BIA didn't really adopt the IJ, so that may be the result in the end one way or the other. But wouldn't we, at minimum, we can't divine that fact from the BIA's decision? I would agree that it would have to be sent back. Counsel, a small point. In looking at the testimony, at one point in time, Mr. Tan says that he had been engaging in these anti-communist demonstrations since the end of 2003, and that he stopped doing that shortly before he was arrested in 2006. In another place, he states that he'd been doing these demonstrations for six and a half years. Would you happen to know which one of those two statements might be correct? Because they don't seem to be consistent. My understanding is that he, at all times since his entry to the United States, has attended anti-communist rallies with his grandfather. And he, especially on April 30th, he would demonstrate in front of the Vietnamese consulate in San Francisco. And my understanding is that although they weren't frequent occurrences, that from the time that he was admitted, he had continuously attended these demonstrations. Thank you. Thank you. The case just argued of Tan v. Holder is submitted. I'd like to thank both counsel for your argument this morning.
judges: Benitez, McKeown, Smith